# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| SUSAN WEBBER; JONATHAN ST. GODDARD; RHONDA MOUNTAIN CHIEF; DAVID MOUNTAIN CHIEF, <br><br> Plaintiffs-Appellants, <br><br> v. <br><br> U.S. DEPARTMENT OF HOMELAND SECURITY; KRISTI NOEM, in her official capacity; THE UNITED STATES OF AMERICA, <br><br> Defendants-Appellees. | No. 25-2717 |

## APPELLEES' RESPONSE IN OPPOSITION TO APPELLANTS' MOTION FOR AN INJUNCTION PENDING APPEAL

Plaintiffs seek to appeal an interlocutory order transferring their case to another federal court, and now try to enjoin—during the pendency of their appeal—Executive Orders and Proclamations that imposed tariffs pursuant to the International Emergency Economic Powers Act (IEEPA) and section 232 of the Trade Expansion Act of 1962. This Court should deny their motion.

Plaintiffs have no likelihood of success on the merits for multiple independent reasons. First, as defendants have explained in our pending motion to dismiss, this Court lacks jurisdiction over the appeal because an order transferring a case is neither a final order nor an appealable collateral order. Second, the district court correctly concluded that the U.S. Court of International Trade (the Trade Court) has exclusive

jurisdiction over plaintiffs' suit. And if any doubt remained on that score, this Court's precedent makes clear that transfer to the Trade Court is appropriate for that court to determine its own jurisdiction in the first instance. Plaintiffs thus cannot show that the district court likely erred in transferring the case in any event. Finally, even aside from these hurdles, plaintiffs make no showing of likelihood of success on the merits of their underlying claims that could warrant an injunction pending appeal, and the other factors justifying injunctive relief pending appeal disfavor plaintiffs. Because plaintiffs fail to satisfy any of the factors, the motion should be denied.

## STATEMENT

### A.    Executive Orders Under IEEPA

In January 2025, the President declared the flow of fentanyl into the country, and the resulting public-health crisis, to be a national emergency. *Declaring a National Emergency at the Southern Border of the United States*, 90 Fed. Reg. 8,327 (Jan. 29, 2025). Using his broad powers under IEEPA, the President took action to deal with the emergency, ordering that most Canadian imports be assessed a 25 percent duty (except for energy and energy resources, which were assessed a 10 percent duty). Executive Order 14193, *Imposing Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed. Reg. 9,113, 9,114 (Feb. 7, 2025). The President later issued an Executive Order exempting all Canadian goods that qualify for duty-free entry under the United States-Mexico-Canada Agreement (USMCA). Executive Order 14231,

2

*Amendment to Duties to Address the Flow of Illicit Drugs Across Our Northern Border*, 90 Fed.
Reg. 11,785 (Mar. 11, 2025).

On April 2, 2025, the President declared a separate national emergency, finding
"that underlying conditions, including a lack of reciprocity in our bilateral trade
relationships, disparate tariff rates and non-tariff barriers, and U.S. trading partners'
economic policies that suppress domestic wages and consumption, as indicated by
large and persistent annual U.S. goods trade deficits, constitute an unusual and
extraordinary threat to the national security and economy of the United States."
Executive Order 14257, *Regulating Imports With a Reciprocal Tariff to Rectify Trade Practices
That Contribute to Large and Persistent Annual United States Goods Trade Deficits*, 90 Fed.
Reg. 15,041 (Apr. 7, 2025). Citing IEEPA, the President acted to address this threat
by, among other things, imposing a 10 percent *ad valorem* tariff on most imported
goods. *Id.* at 15,045. But Executive Order 14257 does not apply to Canadian goods
that qualify for duty-free entry under the USMCA. *Id.* at 15,046.

### B. Proclamations Under Section 232

Section 232 of the Trade Expansion Act of 1962, as amended, directs the
President, after an investigation conducted by the Department of Commerce, to
"adjust the imports" of articles that threaten to impair "national security." 19 U.S.C.
§ 1862.

In January 2018, the Secretary of Commerce transmitted to the President
reports finding that steel and aluminum articles were being imported into the United

3

States in such quantities and under such circumstances as to threaten to impair national security.  Proclamation 9705, *Adjusting Imports of Steel Into the United States*, 83 Fed. Reg. 11,625 (Mar. 15, 2018); Proclamation 9704, *Adjusting Imports of Aluminum Into the United States*, 83 Fed. Reg. 11,619 (Mar. 15, 2018).  The President concurred with the Secretary's findings and adjusted imports of steel and aluminum by imposing 25 percent tariffs on steel articles and 10 percent tariffs on aluminum articles.  While Canada was initially exempted, on February 10, 2025, the President extended section 232 tariffs to Canadian steel and aluminum articles based on fresh information that imports of steel and aluminum articles from certain countries like Canada had increased over the past few years and threatened to impair national security.  Accordingly, the President imposed 25 percent tariffs on Canadian steel, aluminum, and derivative articles.  Proclamation 10896, *Adjusting Imports of Steel Into the United States*, 90 Fed. Reg. 9,817 (Feb. 18, 2025); Proclamation 10895, *Adjusting Imports of Aluminum Into the United States*, 90 Fed. Reg. 9,807 (Feb. 18, 2025).

### C.    District Court Proceedings

In the district court, plaintiffs moved for preliminary and permanent relief enjoining the tariffs imposed by these executive orders and proclamations.  Doc. 4. The government moved to transfer the action to the Trade Court because that court has exclusive subject-matter jurisdiction over the matter.  Docs. 18, 19.

The district court granted the government's motion, determining that the Trade Court had exclusive subject-matter jurisdiction over plaintiffs' challenge to tariffs

imposed on Canadian goods under IEEPA and section 232. Doc. 40. The district court accordingly transferred the case to the Trade Court under 28 U.S.C. § 1631, which permits a federal court without jurisdiction to transfer a case to one with jurisdiction. Plaintiffs filed a notice of appeal of the transfer order, and the same day moved the district court for an injunction pending appeal. Docs. 41-43. The court denied plaintiffs' motion, explaining that, because a notice of appeal had been filed, it had been divested of jurisdiction, and that no exception allowing it to retain jurisdiction applied. Doc. 47. On May 1, 2025, the government moved to dismiss plaintiffs' appeal for lack of appellate jurisdiction, explaining that transfer decisions are interlocutory decisions that cannot be immediately appealed. DktEntry 7.1. That same day, plaintiffs filed a motion for injunctive relief pending appeal. DktEntry 5.1. The motion to dismiss is fully briefed and ripe for resolution. *See* DktEntry 9.1 (opposition brief); DktEntry 10.1 (reply).

## STANDARD OF REVIEW

To obtain the extraordinary remedy of an injunction pending appeal, plaintiffs must establish that their "claims are likely to prevail, that denying [them] relief would lead to irreparable injury, and that granting relief would not harm the public interest." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 16 (2020) (per curiam). An injunction pending appeal "demands a significantly higher justification" than a stay because "an injunction does not simply suspend judicial alteration of the status quo but grants judicial intervention that has been withheld by lower courts." *Respect Me.*

5

*PAC v. McKee*, 562 U.S. 996, 996 (2010) (quotation marks omitted). Plaintiffs

therefore must make a "strong showing" that they will prevail on the merits. *Roman*

*Catholic Diocese*, 592 U.S. at 16. "If a movant fails to establish likelihood of success on

the merits, [the Court] need not consider the other factors." *California v. Azar*, 950

F.3d 1067, 1083 (9th Cir. 2020) (quotation marks omitted).

## ARGUMENT

### I.    Plaintiffs Are Unlikely To Succeed On The Merits

The district court transferred this action to the Court of International Trade.

Plaintiffs seek to appeal that transfer and ask for an injunction pending appeal against

the underlying executive orders and proclamations they challenge. Thus, to show

likely success on the merits, plaintiffs must show a likelihood that this Court will

conclude that (1) the interlocutory transfer order is immediately appealable; (2)

transfer was improper; and (3) plaintiffs are likely to succeed on their underlying

claims. *See Munaf v. Geren*, 553 U.S. 674, 690 (2008). Plaintiffs cannot make any of

these showings.

### A.    The District Court Properly Transferred This Action to the Court of International Trade, and The Transfer Order Is Not Appealable

**1.** As defendants' pending motion to dismiss plaintiffs' appeal explains, the

district court's non-final transfer order is not subject to interlocutory appeal.

DktEntry 7.1; DktEntry 10.1. This Court's jurisdiction in civil cases is generally

limited to appeals from "final decisions of the district courts." 28 U.S.C. § 1291. A

district court's order is "final" when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373–74 (1981) (quotation omitted). This Court may also entertain appeals from certain "collateral" orders that are "effectively unreviewable on appeal from a final judgment." *Breazeale v. Victim Servs., Inc.*, 878 F.3d 759, 766 (9th Cir. 2017).

The district court's transfer order is not "final" within the meaning of 28 U.S.C. § 1291. Litigation on the merits (including any threshold defenses to plaintiffs' claims) will proceed in the Trade Court. As section 1631 explains, a case transferred under its provisions "shall proceed as if it had been filed in" the transferee court. As such, this Court's sibling circuits uniformly have concluded that section 1631 orders are not final. *See, e.g., Subsalve USA Corp. v. Watson Mfg., Inc.*, 462 F.3d 41, 47 (1st Cir. 2006) ("Although the issue is one of first impression in this circuit, every court of appeals to have confronted it has concluded that section 1631 transfer orders are not immediately appealable.") (collecting cases); *see also Montana Wildlife Fed'n v. Haaland*, 127 F.4th 1, 32 (9th Cir. 2025) (transfer orders under 28 U.S.C. §§ 1404 and 1406 "are interlocutory in nature and are not appealable prior to final judgment" (quotation omitted)).

The district court's transfer order is not an appealable collateral order, either. Section 1631 transfer orders are "effectively reviewable by the transferee circuit court," as every circuit to address this question has concluded. *Cruz v. Ridge*, 383 F.3d

7

62, 65 (2d Cir. 2004) (per curiam); *Ukiah Adventist Hosp. v. Fed. Trade Comm'n*, 981 F.2d 543, 546–48 (D.C. Cir. 1992); *In re Carefirst of Md., Inc.*, 305 F.3d 253, 262 (4th Cir. 2002); *Fed. Deposit Ins. Corp. v. McGlamery*, 74 F.3d 218, 221 (10th Cir. 1996); *Persyn v. United States*, 935 F.2d 69, 73 (5th Cir. 1991); *Alimenta (USA) v. Lyng*, 872 F.2d 382, 384–85 (11th Cir. 1989); *Kinder v. City of Myrtle Beach*, 2015 WL 4456562, at *1 (6th Cir. July 20, 2015) (unpublished); *United States ex rel. Felton v. Allflex USA, Inc.*, 155 F.3d 570 (Fed. Cir. 1998) (unpublished). Accordingly, plaintiffs are not likely to prevail on the merits of their appeal because this Court lacks jurisdiction over the appeal.

**2.** Nor are plaintiffs likely to prevail on their arguments that the district court erred by transferring the case. The district court correctly concluded that it lacked jurisdiction over this matter because Congress has vested exclusive jurisdiction in the Trade Court. Doc. 40. The Trade Court has "exclusive" jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for . . . tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue," 28 U.S.C. § 1581(i)(1)(B), as well as any civil action arising out of any law "providing for administration and enforcement with respect to" such matters, *id.* § 1581(i)(1)(D). This grant of exclusive jurisdiction covers plaintiffs' challenge to national-security tariffs imposed under IEEPA and section 232. *Cornet Stores v. Morton*, 632 F.2d 96, 99–100 (9th Cir. 1980) (holding that a challenge to tariffs imposed under IEEPA's

materially indistinguishable predecessor fell within the exclusive jurisdiction of the

Customs Court, the Trade Court's predecessor); *Transpacific Steel LLC v. United States*, 4

F.4th 1306, 1318 n.5 (Fed. Cir. 2021) (challenges to section 232 tariffs are "clearly

cover[ed]" by the Trade Court's jurisdictional statute). Indeed, the Trade Court is

presently exercising jurisdiction over materially identical actions challenging many of

the tariffs at issue here. Doc. 40 at 15 (citing three such actions). The district court

was "divested of jurisdiction," *K Mart Corp. v. Cartier, Inc.*, 485 U.S. 176, 182–83

(1988), and it rightly transferred plaintiffs' case to the Trade Court.

Moreover, even if some doubt remained about the Trade Court's jurisdiction,

this Court's precedent is clear that in situations where a matter may be within the

Trade Court's exclusive jurisdiction, "the prudent thing to do" is precisely what the

district court did here: "transfer the case to the [Trade Court] so that [it] can

determine the question of its own jurisdiction." *Pentax Corp. v. Myhra*, 72 F.3d 708,

711 (9th Cir. 1995). Plaintiffs cannot show any likelihood of success where the

district court followed the course this Court has prescribed for resolving questions

regarding the Trade Court's exclusive jurisdiction.

Plaintiffs' arguments to the contrary are unpersuasive. They argue that they are

members of the Blackfeet Tribe who assert claimed rights under the Indian

Commerce Clause and the Jay Treaty of 1794 to be free from tariffs, DktEntry 5.1

(Mot.) at 4–15, and that, in their view, these are claims within the district court's

jurisdiction. The particular legal arguments that plaintiffs have raised to challenge

these tariffs do not matter; otherwise, litigants "could simply recast" their claims to circumvent the Trade Court's exclusive jurisdiction. *United States v. Universal Fruits & Vegetables Corp.*, 370 F.3d 829, 836 (9th Cir. 2004). But Congress's "grant of exclusive jurisdiction cannot be so easily circumvented." *Id.* Plaintiffs "may not, by creatively framing [their] complaint, circumvent a congressional grant of jurisdiction" to the Trade Court. *Id.* (quotation omitted). Plaintiffs' civil action seeks to enjoin tariffs imposed under statutes providing for tariffs and the administration and enforcement with respect to tariff matters. Mot. 1. That means the Trade Court, not the district court, has jurisdiction over the action. 28 U.S.C. § 1581(i); *K Mart Corp.*, 485 U.S. at 182–83.

Indeed, the Trade Court's predecessor and the appellate court with exclusive jurisdiction to review its decisions considered claims of Native Americans alleging entitlement to duty-free entry of goods under the Jay Treaty of 1794. *Akins v. United States*, 551 F.2d 1222 (C.C.P.A. 1977); *United States v. Garrow*, 88 F.2d 318 (C.C.P.A. 1937). These claims, like plaintiffs', fell within that court's exclusive jurisdiction. *Akins v. Saxbe*, 380 F. Supp. 1210, 1218 (D. Me. 1974) (dismissing a Jay Treaty claim because it was "within the exclusive jurisdiction of the Customs Court"). And in any event, that prior exercise of jurisdiction underscores the propriety of this Court's instruction that cases should be transferred to allow the Trade Court to determine its own jurisdiction. *Pentax Corp.*, 72 F.3d at 711.

10

Plaintiffs' argument that 28 U.S.C. § 1362 gives the district court jurisdiction over all civil actions brought by Indian Tribes fares no better. Mot. 10. First, section 1362 covers only cases actually brought by Indian Tribes or Bands. But the Blackfeet Tribe is not the plaintiff here; rather, plaintiffs are members of the Blackfeet Tribe pursuing their case as individuals. *See Dillon v. Montana*, 634 F.2d 463, 469 (9th Cir. 1980) (section 1362 applies to Indian Tribes and "is not available to individual Indians"). Moreover, unlike section 1581, section 1362 does not grant the district courts *exclusive* jurisdiction; rather, it simply mirrors section 1331's general grant of federal-question jurisdiction and extends that grant to Indian Tribes. Section 1362 "does not itself signify that Indian tribes are exempted from the provisions of" other jurisdictional statutes. *Moe v. Confederated Salish & Kootenai Tribes of Flathead Rsrv.*, 425 U.S. 463, 472 (1976). And as the district court correctly held, "by creating a grant of exclusive jurisdiction, [s]ection 1581(i) removes specific actions from the general federal-question jurisdiction of the district courts [ ] and places them in the jurisdiction of the Court of International Trade." Doc. 40 at 10 (cleaned up). Finally, section 1581—in addition to being enacted later in time—is more specific than 1362. *See Morton v. Mancari*, 417 U.S. 535, 550-51 (1974). There is no viable legal theory under which section 1362 overrides section 1581.

### B. Plaintiffs Are Not Likely To Succeed On Their Underlying Claims

Even if this Court had jurisdiction to hear plaintiffs' appeal, and even if plaintiffs' arguments about the district court's jurisdiction were likely to succeed, plaintiffs would still be unlikely to succeed on their substantive claims.

To start, plaintiffs insist that likelihood of success on their claims is "not a consideration at the motions stage," and thus only cursorily mention their arguments concerning the Indian Commerce Clause. Mot. 11. But plaintiffs must make a "strong showing" that they will prevail on the underlying merits. *Roman Catholic Diocese*, 592 U.S. at 16; *Munaf*, 553 U.S. at 690–91 (holding that a district court abused its discretion in granting an injunction after addressing jurisdictional issues but "without even considering the merits" of the underlying claim). Plaintiffs' "[i]nadequately briefed and perfunctory arguments" on the merits are thus "waived." *Cal. Pac. Bank v. FDIC*, 885 F.3d 560, 570 (9th Cir. 2018).

Plaintiffs' arguments readily fail in any event. Plaintiffs argue that only Congress can regulate trade with the Indian tribes, Mot. 11, but they cannot explain how that argument relates to this case. No Indian tribe is a party to this case. And the tariffs plaintiffs challenge regulate foreign commerce, not commerce with Indian tribes. Nor is there any question that Congress can constitutionally delegate to the Executive its powers to regulate commerce, including commerce with Indian tribes. *J.W. Hampton, Jr., & Co. v. United States*, 276 U.S. 394 (1928).

12

Plaintiffs likewise will not succeed on their Jay Treaty claim. The Jay Treaty is no longer in effect. As the Supreme Court concluded in *Karnuth v. United States ex rel. Albro*, 279 U.S. 231 (1929), article III of the Jay Treaty, which in part afforded Native Americans duty-free entry of their goods, "was brought to an end by the War of 1812 . . . ." *Id.* at 241. Accordingly, federal courts with jurisdiction over challenges to tariffs have routinely held that the exemption from tariffs that plaintiffs here claim no longer exists. *See, e.g., Akins*, 551 F.2d at 1228 ("We agree with the Customs Court that the provisions of Article III . . . are no longer in force."); *Garrow*, 88 F.2d at 323 (same).

Plaintiffs have thus failed to make a strong showing of likelihood of success on the merits.

## II. The Remaining Factors Favor The Government

Plaintiffs' failure to establish a likelihood of success on the merits is sufficient to deny their motion. *See, e.g., Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1240 (9th Cir. 2023) ("Because plaintiffs fail to show any likelihood of success on any of their claims, we have no need to address any of the remaining [preliminary injunction] factors."). Plaintiffs likewise fail to satisfy the remaining factors necessary to obtain an injunction.

**1.** First, plaintiffs cannot establish irreparable harm. Two of them say that their "cab company depends on tourism" and that their bookings are down, Mot. 16, but both fail to explain how this issue involves tariffs on imported goods. Another

13

plaintiff says that he paid a $308.77 tariff, but "[m]ere financial injury" does not "constitute irreparable harm" because "adequate compensatory relief will be available in the course of litigation" at the Trade Court. *Goldie's Bookstore, Inc. v. Superior Ct.*, 739 F.2d 466, 471 (9th Cir. 1984). Nor does one alleged instance of past harm suffice to show the imminent future irreparable harm necessary to obtain prospective relief. *See City of Los Angeles v. Lyons*, 461 U.S. 95, 105–10 (1983). And the remaining evidence discussed by plaintiffs involves non-parties and not plaintiffs themselves. Mot. 16–18 (citing declarations from non-parties who allege that tariffs have harmed their businesses). Plaintiffs accordingly have failed to demonstrate irreparable harm absent an injunction pending appeal.

**2.** Nor can they show that the public interest or balance of hardships favor an injunction. The President has declared a national emergency in light of threats to the United States' economy, military preparedness, and national security. In these circumstances, IEEPA and section 232 authorize the President to take appropriate action to address the threats to the United States. The equities and public interest lie there, not with plaintiffs.

An injunction would also be an enormous intrusion on the President's conduct of foreign affairs and efforts to protect national security under IEEPA, section 232, and the Constitution. *See* U.S. Const. art. II, § 2. This is particularly so given that the United States is currently in sensitive trade negotiations with a multitude of countries—discussions that preliminary relief would likely short-circuit. *See* Executive

14

Order 14266, *Modifying Reciprocal Tariff Rates to Reflect Trading Partner Retaliation and Alignment*, 90 Fed. Reg. 15,625 (Apr. 15, 2025) (since the issuance of Executive Order 14257, "more than 75 other foreign trading partners . . . have approached the United States to address the lack of trade reciprocity in our economic relationships and our resulting national and economic security concerns").  Plaintiffs' request to enjoin the tariffs pending their meritless appeal would undermine the President's goals and weaken the effectiveness of the President's chosen action.  By contrast, plaintiffs have not shown any hardship beyond compensable economic harm.

## CONCLUSION

For these reasons, plaintiffs' motion for an injunction pending appeal should

be denied.

Dated: May 12, 2025                              Respectfully submitted,

*Of Counsel:*                                    YAAKOV M. ROTH
                                                 *Acting Assistant Attorney General*
ALEXANDER K. HAAS
    *Director*                                   ERIC J. HAMILTON
    *Federal Programs Branch*                        *Deputy Assistant Attorney General*
                                                     *Federal Programs Branch*
STEPHEN M. ELLIOTT
    *Assistant Director*                         PATRICIA M. McCARTHY
    *Federal Programs Branch*                        *Director, National Courts*

                                                 s/Claudia Burke
SOSUN BAE                                        CLAUDIA BURKE
    *Senior Trial Counsel*                           *Deputy Director, National Courts*

CATHERINE M. YANG                                s/Justin R. Miller
BLAKE W. COWMAN                                  JUSTIN R. MILLER
COLLIN T. MATHIAS                                    *Attorney-In-Charge*
    *Trial Attorneys*                                *International Trade Field Office*
    *U.S. Department of Justice, Civil Division*
    *Commercial Litigation Branch*               s/Luke Mathers
                                                 LUKE MATHERS
                                                     *Trial Attorney*
                                                     *U.S. Department of Justice, Civil Division*
                                                     *Commercial Litigation Branch*
                                                     *26 Federal Plaza, Room 346*
                                                     *New York, NY 10278*
                                                     *(212) 264-9236*

16

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing motion complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2) and Ninth Circuit Rules 27-1(1)(d) and 32-3 because it contains 3,528 words and 16 pages. This Motion complies with the typeface and the type-style requirements of Federal Rule of Appellate Procedure 27 because this brief has been prepared in a proportionally spaced typeface using Word 14-point Garamond typeface.

*/s/ Luke Mathers*
LUKE MATHERS