IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Defendants. | No. 25-2717 |

**APPELLANT'S REPLY BRIEF IN SUPPORT OF MOTION FOR A PRELIMINARY INJUNCTION (DOC. 5.1) PURSUANT TO RULE 8**

Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief, and David Mountain Chief, enrolled members of the Blackfeet Tribe, ask this Court to enjoin the President's unilateral, universal tariffs that are destroying their family businesses and way of life on the cross-border Blackfeet Nation. An injunction will protect the status quo pending the final decision on the merits.

Appellants filed sixteen declarations of the irreparable harm caused by the President's chaotic tariffs. This Court can mitigate the harm by enjoining the Canada Orders before clearing of Going to the Sun highway and the Glacier National Park summer tourist season.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**                                          1

# ARGUMENT

Appellants must show likely success on their appeal of the transfer of this case to the Court of International Trade.[1] The motions panel "is predicting the likelihood of success of the appeal" – not the likelihood of success of the underlying litigation.[2] The Plaintiffs' claims must be judged from the face of the complaint, and all allegations taken as true.[3]

## I. Likelihood of success on appeal of transfer Order.

### A. The transfer Order is appealable.

The government argues the District Court's transfer Order isn't reviewable. Clear precedent disposes of that quickly. In *Terenkian v. Republic of Iraq*, this Court held: "A district court's transfer of a case to an out-of-circuit district court does not strip an appellate court of jurisdiction over an interlocutory […] decision of a district court within its circuit. […] Under 28 U.S.C. §1294, we have exclusive jurisdiction over such immediately appealable orders."[4] The district court's transfer order is immediately appealable.

---

[1] *Simon v. San Fran.*, 24-1025, 24-6052, 16 (9th Cir. 2025); *Env't Prot. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020); *Winter v. NRDC*, 555 U.S. 7, 20 (2008).
[2] *State of Wash. v. Trump,* No. 25-807 p. 2 (2025), Forrest, J., FRCP 62(g)(1); FRAP 8(a)(2)(D) and 27(c); *East Bay v. Biden*, 993 F.3d 640, 660 (9th Cir. 2021).
[3] *Savage v. Glendale High*, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004), ovr'd on other grounds by *Munoz v. Superior Ct. of L.A. Cnty.*, 91 F.4th 977 (9th Cir. 2024).
[4] *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1129–30 (9th Cir. 2012) cleaned up.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**      2

The government's cases support that conclusion. In *In re Carefirst of Maryland* the Fourth Circuit reviewed a Maryland district court transfer of a case to Kentucky.[5] The Court noted that "in a case involving the lack of *subject matter jurisdiction*, this court has concluded that *a section 1631 transfer order was immediately appealable*."[6] Every single case cited by the government is from a Circuit Court reviewing an in-circuit district court transfer decision.[7]

This Court decides its own jurisdiction *de novo*.[8] Courts review transfer orders under § 1631 in various circumstances. A Rule 59(e) motion seeking review of a transfer order under § 1631 is immediately appealable as final.[9] Here, Appellants sought reconsideration of the transfer order.[10] In *Burlington N. & Santa Fe Ry. Co. v. Vaughn*, the Court noted a district court's denial of tribal sovereign immunity is immediately appealable when the order is effectively unreviewable on appeal from a final judgment.[11] That logic applies here.[12] When a transfer order is tied to an injunction, as is the case here, the transfer is immediately appealable.[13]

---

[5] *In re Carefirst of Maryland, Inc.*, 305 F.3d 253 (4th Cir. 2002) emphasis added.
[6] *Carefirst*, 305 F.3d at 256, *Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986).
[7] Doc. 9.2.
[8] *Falck N. Cal. Corp. v. Scott Griffith Collaborative Sols., LLC,* 25 F.4th 763, 765 (9th Cir. 2022); also *Parsons v. Ryan*, 912 F.3d 486, 503 (9th Cir. 2018); *Packsys, S.A. de C.V. v. Exportadora de Sal, S.A. DE C.V.*, 899 F.3d 1081 (9th Cir. 2018).
[9] *Whaley v. Court of Criminal Appeals*, No. 3:19-CV-2392-C (N.D. Tex. 2020).
[10] District Court Doc. 45 and 46.
[11] *Burlington N. & Santa Fe v. Vaughn*, 509 F.3d 1085, 1089–91 (9th Cir. 2007).
[12] *Carefirst*, 305 F.3d at 256, *Gower v. Lehman*, 799 F.2d 925 (4th Cir. 1986).
[13] *Terra Intern. v. Mississippi Chem Corp.*, 922 F.Supp. 1334 (N.D. W.Va. 1996).

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION** 3

The transfer order is reviewable only in the Ninth Circuit, and no other.

**B.    The Plaintiffs are likely to win on their Constitutional claims.**

This case arises under the Constitution. The question before the Court is whether a President can – in complete disregard of Article I, Section 8, Clause 3 of the Constitution – regulate commerce with the Indian Tribes. The government uses the word "constitution" once – to refer to Article II power. It totally fails to address the constitutional claims Plaintiffs bring.

The Constitution granted power to Congress – and Congress alone – to regulate commerce. The government concedes that the Plaintiffs will win: "[..] the tariffs plaintiffs challenge regulate foreign commerce, not commerce with Indian tribes."[14] As such, the tariffs cannot be imposed on the Piegan/Carway and Del Bonita ports of entry. Those crossings lie entirely within the Blackfeet lands, and connect the Blackfeet people to the Blackfoot Confederacy north of the 49th parallel that is historically one nation.[15] The Court can enjoin the Canada Orders based on the government's representations.

The government's claims that the CIT has exclusive jurisdiction fail for two reasons. *First*, the CIT's exclusive jurisdiction pertains to statutory issues. This is a constitutional case.[16] The First Amended Complaint challenges the President's

---

[14] Doc. 12.1, p. 12.
[15] Doc. 4.10, Declaration of Blackfoot Chiefs; Doc. 4.2 Declaration of Ryan Hall.
[16] Doc. 15, First Amended Complaint, ¶¶ 7-10.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**                     4

regulation of commerce as a violation of Article I, Section 8, Clause 3: "**Congress shall have Power**…To regulate Commerce with foreign Nations, and among the several States, **and with the Indian Tribes**." The Commerce Clause distinguishes "States," "foreign Nations," and "Indian Tribes." The President's attempts to regulate commerce with the Indian Tribes, including the Plaintiffs as enrolled members of the Blackfoot Tribe, are unconstitutional.[17] The CIT is a creature of Congress. Its statutory jurisdiction applies only to international trade matters. It does not have authority over tribal commerce. The transfer is legally invalid. The *only* court that has subject matter jurisdiction over tribal members' Constitutional right under the Indian Commerce Clause is this Court. Article III § 2 Cl. 1.

*Second*, the government's transfer relies completely on 28 U.S.C. § 1581(i)(1)(B). That reliance is shredded by the administration's statements that the tariffs are intended to raise revenue:

- The House budget bill incorporates revenue from tariffs as a key component of its fiscal strategy to offset proposed tax cuts.[18]

- The President described the tariffs: "They're a beautiful thing for us," [..] "If you can use them, if you can get away with using them, it's going to make

---

[17] *Cotton Petroleum v. New Mexico*, 490 U.S. 163, 191-92, 109 S. Ct. 1698, 104 L.Ed.2d 209 (1989); *Cherokee Nation v. Georgia*, 5 Pet. 1, 18, 8 L.Ed. 25 (1831).
[18] Available at https://prod-i.a.dj.com/public/resources/documents/GOPtaxplan-2025-05-12.pdf (last visited May 13, 2025).

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION** 5

us very rich. […] so much money will be taken in that we'll be able to lower your taxes […]."[19]

- Treasury Secretary Bessent claims tariff revenue will help with tax cuts.[20]
- The President claims the tariffs will generate "trillions and trillions of dollars to reduce our taxes and pay down our national debt."[21]

In transferring the case to the CIT, this Court did not find a "want" of jurisdiction under 28 U.S.C. § 1631; rather, it found that the CIT had exclusive jurisdiction under 28 U.S.C. § 1581(i)(1)(B), a provision that *only* applies to non-revenue tariffs.[22] The administration's clear and repeated statements that the tariffs are to raise revenue defeat its reliance on §1581(i)(1)(B) for jurisdiction at the CIT.

The government cites *Akins* and *Garrow* to argue that the CIT has considered claims by Native Americans under the Jay Treaty and therefore has jurisdiction over these constitutional claims. This compares apples to oranges. The argument in this case, as distinct from that made in *Akins*, is that Native Americans

---

[19] See https://apnews.com/article/trump-tariffs-deals-china-trade-02986c700a2d46c8b1ba85afe77d139f last visited May 13, 2025.
[20] See https://tax.thomsonreuters.com/news/treasury-hopes-to-offset-tax-cut-costs-with-tariff-revenue/#:~:text=Treasury%20Secretary%20Scott%20Bessent%20expressed,negotiations%20with%20congressional%20taxwriters%20on last visited May 13, 2025.
[21] See https://en.wikipedia.org/wiki/Liberation_Day_tariffs and also https://www.nytimes.com/live/2025/04/02/business/trump-tariffs-liberation-day (last visited May 13, 2025).
[22] 28 U.S.C. § 1581(i)(1)(B): the CIT has exclusive jurisdiction over tariffs on imports that are not intended to raise revenue.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**      6

have a constitutional right to engage in commerce as ***regulated by Congress*** – and Congress alone. The issue in *Akins* and *Garrow* was *congressional* regulation of commerce with Indian Tribes.[23] The issue here is whether the *executive* can regulate commerce with the Indian Tribes.[24] The Constitution is the source of rights – unlike in *Akins* and *Garrow*.

The Jay Treaty is evidence of the constitutional framework that gave Congress alone power to regulate commerce with the Indian Tribes.[25] The 1796 explanatory provision held no further treaties would derogate recognized rights.[26] The Constitutional context controls the merits of this case. The CIT is not set up to address and weigh constitutional contextual history of the 1700s. Nor is it set up to address foundational issues related to Native American law under the Constitution. The CIT does not have jurisdiction over these foundational constitutional claims.

The Blackfoot people engaged in sophisticated trade and were evolving and flexible economic actors, strategically optimizing their economic well-being as a

---

[23] *Akins v. U.S.*, 551 F.2d 1222, (1977); *Akins v. Saxbe*, 380 F.Supp 1210, 1217 (D.Me. 1974)(deferring to Congressional purpose); *U.S. v. Garrow*, 88 F.2d 318, 24 CCPA 410 (1937)(challenging Tariff Act of 1930 (19 U.S.C.A. § 1001, par. 411)); *Int'l Custom Prods., Inc. v. U.S.*, 791 F.3d 1329 (Fed. Cir. 2015)(classification for "white sauce" under Harmonized Tariff Schedule).
[24] *Karnuth v. U.S.*, 279 U.S. 231 (1929); *U.S. v. Wholesale Supply* 822 F.Supp.2d 326 (W.D. N.Y. 2011).
[25] *U.S. v. McCandless* 18 F.2d 282, 283 (W.D.Pa. 1927).
[26] Explanatory Article (1796) https://avalon.law.yale.edu/18th_century/jayex1.asp (last visited May 13, 2025).

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION** 7

people in the northwest plains.[27] The historical record and the Constitution support Plaintiffs right to engage in commerce across the ports of authority at Del Bonita and Piegan/Carway, located on their tribal lands, without tariffs imposed by the executive.

The government cites *Dillon v. Montana* to argue that Plaintiffs cannot avail themselves of 28 U.S.C. §1362. In *Dillon* federal subject matter jurisdiction under 28 U.S.C. § 1343(3) supported the argument that a state could not tax a Tribes' income.[28] *Dillon* has no bearing on the constitutional nature of the Plaintiffs' claims, and the government's assertion ignores the long line of Supreme Court cases that hold commerce with the Indian Tribes means "commerce with *the individuals* composing those Tribes."[29] Here, enrolled members of the Blackfeet Tribe bring Constitutional claims, which must be heard in this Court.[30]

The government offers no way around this black letter authority. The CIT is without jurisdiction to hear this case; its circuit is without jurisdiction to hear an appeal from the transfer order.[31] The Plaintiffs will be here now, or later.[32]

---

[27] Doc. 26, Second Hall Declaration.
[28] *Dillon v. State of Mont*., 634 F.2d 463 (9th Cir. 1980).
[29] *Haaland v. Brackeen*, 599 U.S. 255, 274-75; *U.S. v. Holliday*, 70 U.S. 407, 418 (1865); *Gibbons v. Ogden,* 22 U.S. 1 (1824).
[30] *Holliday*; *Worcester v. State*, 31 U.S. 515, 580-581 (1832).
[31] *Rigsby*, 59 F.4th 998, *Posnanski*, 421 F.3d 977, 980.
[32] *Posnanski*, 421 F.3d at 980.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION** 8

## II. Irreparable harm

Sixteen declarations set out factual claims of harm.[33] The government dismisses the claims but does not counter them. The family ranches and businesses at issue are more than just money – they are a way of life.[34] Jonathan St. Goddard, Wayne Smith, and Sarah Degn attest to instability in agriculture due to the tariffs, which affect their ability to plan and sustain their operations. The tariffs have led to a loss of international markets for crops like soybeans, corn, and wheat, and increased costs for equipment due to steel and aluminum tariffs.[35] Rhonda Mountain Chief and Stephen Conway describe a decline in tourism due to tariffs, which harms their transportation and campground businesses.[36] The Blackfoot Confederacy Chiefs Society attest to the disruption of cross-border relations and cultural exchanges due to tariffs, which affect the Blackfoot traditional territory and economic activities.[37] Mary Jane Oatman highlights the challenges faced by Native American businesses due to tariffs, including delays in shipments, increased costs, and halted construction projects, which impede economic development and sustainability efforts in Indian Country.[38] These declarations collectively illustrate

---

[33] Docs. 4.1 to 4.12.
[34] Doc. 4.13 para. 2-3.
[35] 4.3 Dec. of Sarah Degn; 4.5 Dec. of John Wicks; 4.11 Dec. of Wayne Smith.
[36] 4.6 Dec of Rhonda Mountain Chief, p. 2, 4.7 and 4.8 Dec of Conways.
[37] 4.10 Dec of Chiefs.
[38] 4.12 Declaration of Oatman.

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION** 　　　　9

the multifaceted harms to a way of life. Those harms are irreparable and an injunction is proper.[39]

### III. Balance of equities and public interest

Where the government is the defendant, the balance of equities and public interest factors merge.[40] The government argues an injunction would "undermine the President's goals" and that "sensitive trade negotiations" are ongoing. The President's stated goal, in his own words, is to get rich: " [..] if you can get away with using them, it's going to make us very rich." That's not a goal that outweighs the Plaintiffs' interests in operating their businesses and communities under the rule of law.

The "sensitive trade negotiations" referenced by the government put the lie to the claim that the President's tariffs are about security. They are about money. A question for the merits stage is who is making how much money from the precipitous tariff changes. No national emergency can be solved by crazy shifting tariffs. But someone with knowledge of the next move is well-positioned to get "very rich."

Plaintiffs invested in an America that follows the rule of law. Under the Constitution, congress alone regulates commerce. The balance of equities and the

---

[39] *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053 (9th Cir. 2014); *Rent-A-Center, Inc. v. Canyon Television and Appliance Rental, Inc.*, 944 F.2d 597 (9th Cir. 1991).
[40] *Nken v. Holder*, 556 U.S. 418, 435 (2009).

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**               10

interests of justice support upholding the rule of law and the Constitution over making one man and his close friends "very rich" if they "can get away with" it.

Time is running out, but the 2025 season can be salvaged. Plaintiffs ask the Court to enjoin the Canada Orders. They want to engage in the family, community and tribal commerce that sustains them and their way of life.

## CONCLUSION

The Constitution places exclusive, plenary power with Congress to regulate commerce with the Indian Tribes. That power has never been delegated – nor can it be. The Canada orders violate crystal clear language of the Constitution. Plaintiffs respectfully request this Court enjoin them.

Respectfully submitted this 15th day of May, 2025.

                                          TRANEL LAW FIRM, P.C.

                                          By: /s/ *Monica Tranel*
                                                 Monica Tranel
                                                 TRANEL LAW FIRM, P.C.
                                                 401 Washington Street
                                                 Missoula, MT 59802
                                                 (406) 926-2662
                                                 *mtranel@tranelfirm.com*
                                                 Attorneys for Plaintiffs

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**           **11**

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(C), and Circuit Rule 32-3, I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of less than 2,600 words, excluding the portions exempted by Fed. R. App. P. 32(f), if applicable. The brief's type size and type face comply with Fed. R. App. P. 32(a)(5) and (6).

DATED this 15th day of May, 2025.

TRANEL LAW FIRM P.C.

*/s/ Monica J. Tranel*
Monica J. Tranel
*Attorneys for Appellants*

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**      **12**

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 15, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

DATED this 15th day of May, 2025.

/s/ *Monica J. Tranel*
Monica J. Tranel

**REPLY BRIEF IN SUPPORT OF MOTION FOR INJUNCTION**          13