# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief,<br><br>Appellants,<br><br>vs.<br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM,<br><br>Appellees. | No. 25-2717 |

## APPELLANTS OPPOSITION TO GOVERNMENT'S MOTION TO HOLD PROCEEDINGS IN ABEYANCE

The government fails to "make a clear case of hardship or inequity" as required by law to support its stay request. *Landis v. North American Co.*, 299 U.S. 248, 254-255 (1936). The government bears the burden of demonstrating that a stay is warranted. *Clinton v. Jones*, 520 U.S. 681 (1997)(stay decision was an abuse of discretion because it took no account of the importance of respondent's interest in bringing the case to trial). It has failed to meet that burden and the request for a stay should be denied.

1. Webber's claims are a constitutional challenge to executive overreach affecting tribal sovereignty, which must be adjudicated under the Indian canons of construction. *Cherokee Nation v. Georgia*, 5 Pet. 1 (1831); *Haaland v. Brackeen*,

1

143 S. Ct. 1609 (2023). Under the Constitution, Indian Tribes are distinct from foreign nations. Art. I, Sec. 8, Cl. 3. The government argues in its response brief: "The provision of IEEPA most relevant here authorizes the President to "prevent or prohibit" or "regulate any *importation of any property in which any foreign country* or a national thereof has any interest." Response Brief, p. 10, citing 50 U.S.C §1702(a)(1)(B) (emphasis added). By definition, the authority relied on in the executive orders to impose universal tariffs across the board do not apply to Indian Tribes and the individuals that comprise the Tribes. Article I, Section 8, Clause 3 of the constitution differentiates between "States," "foreign Nations," and "Indian Tribes." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 191-92 (1989); *Cherokee Nation v. Georgia*, 5 Pet. 1, 18, 8 L.Ed. 25 (1831). The Indian Commerce Clause is an exclusive grant of power *to Congress* to regulate commerce "with the Indian Tribes." *Haaland,* 143 S.Ct. at 1627-1628.

2. The International Emergency Economic Powers Act of 1977 (IEEPA) and the Trade Expansion Act of 1962 (19 U.S.C. § 1862(c)(1)(A)) (Section 232), which the executive orders rely on to impose tariffs on tribes, pertain exclusively to foreign commerce. Neither statute mentions Indian Tribes or Tribal commerce. The government concedes that Webber's challenge to tariffs imposed under Section 232 is not controlled by the Supreme Court's disposition of *V.O.S. Selections*. (p. 5) In the same way, Webber's challenge to tariffs imposed under

IEEPA is unrelated to *V.O.S. Selections* because nothing in IEEPA mentions Tribes. In *V.O.S. Selections*, the Federal Circuit used the Harmonized Trade Schedule of the United States [HTSUS] as the jurisdictional hook to trigger 28 U.S.C. § 1581(i)(1)(B). *V.O.S. Selections*, 2025 WL 2490634, at *22-23. This has nothing to do with the President's authority to impose tariffs *on Tribes*.

3. Under Indian canons of construction, delegation of congressional power cannot be implied – it must be explicit. *Haaland*, 143 S.Ct. at 1652-1654 (Gorsuch concurring opinion); *McGirt v. Oklahoma*, 140 S.Ct. 2452, 2462 (2022) (Congress must be explicit when legislating regarding Indian law, "[S]aving the political branches [from] embarrassment […] is not one of our constitutionally assigned prerogatives."); *Oklahoma v. Castro-Huerta,* 142 S.Ct. 2486, 2495 (2020) (the text of a law controls over purported legislative intentions); and *Herrara v. Wyoming*, 139 S.Ct. 1686, 1689 (2019) (If Congress seeks to abrogate treaty rights, "it must clearly express its intent to do so."). Under the Indian canons of construction, congressional silence in IEEPA and Section 232 allows no other conclusion than that the Executive Orders are unconstitutional and do not apply to Tribal commerce. Adjudication of that question cannot be stayed under *Landis*.

4. The Ninth Circuit has long recognized its authority to adjudicate constitutional claims even where parallel proceedings exist elsewhere. *Lowe v. Manhattan Beach City School District*, 222 F.2d 258, 260 (9th Cir. 1955) quoting

3

*Bell v. Hood*, 327 U.S. 678, 684 (1946)("the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"). The question of whether the President can impose tariffs on Tribes, when no statute grants that authority, is not before any other Court in any other case.

5. Clear precedent dictates that the only review of the district court's transfer order is here. *Rigsby v. GoDaddy Inc.*, 59 F.4th 998 (9th Cir. 2023). Staying that review would harm Webber. The Ninth Circuit has recognized that abeyance is an "extraordinary remedy" and should be granted only in rare circumstances where the balance of equities and judicial economy clearly favor it. *Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F.3d 1059, 1064-1065 (9th Cir. 2007)(error to stay where it would leave a litigant "effectively out of court"). The government argues that abeyance would promote judicial economy. But where jurisdiction is actively contested, and the case involves distinct legal theories and plaintiffs, judicial economy is not served by delay. The Ninth Circuit is not bound by the Federal Circuit's interpretation of CIT jurisdiction, and deference is not required where constitutional rights are at stake. *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278 (9th Cir. 1988). This Circuit's precedent weighs in favor of staying the petition for a writ in *V.O.S. Selections*, pending this Court's decision in both *Webber* and the *State of California* cases. See *Lockyer v. Mirant*,

4

398 F.3d 1098, 1110-1111 (9th Cir. 2005)(applying the *Landis* factors and noting that in the interests of uniform treatment of like suits there is much to be said for delaying the front runner).

6. The government's motion is premised on the possibility that the Supreme Court may grant certiorari in *Trump v. V.O.S. Selections, Inc.* or *Learning Resources, Inc. v. Trump*. However, as of this filing, the Supreme Court has not granted certiorari in either case. More concerning, the government's position here directly contradicts its argument in *Learning Resources* that the petition for a writ "should be denied or, at most, held." *Learning Resources, Inc. v. Trump*, No. S.Ct. Docket 24-1287, Letter submitted September 4, 2025. The mere filing of a certiorari petition does not warrant abeyance, especially where, as here, the issues are of significant and immediate consequence to the parties. If the possibility of Supreme Court review were enough, stays would become routine.

7. In *Trump v. CASA, Inc.*, 606 U.S. ___ (2025), the government explicitly argued that constitutional challenges to executive orders, particularly those implicating foundational rights, should be allowed to "bubble up" through the lower courts to ensure a full and diverse record for Supreme Court review. The Court acknowledged this rationale in denying universal relief and emphasized the importance of independent adjudication across circuits. See *Trump v. CASA, Inc.*, No. 24A884. Webber presents distinct constitutional and treaty-based claims

5

involving Tribal trade rights under Jay's Treaty and the Supremacy Clause. It is precisely the kind of litigation that benefits from independent development in the Ninth Circuit, the circuit that has dealt most extensively with Indian law canons.

8. The government's arguments here are largely the same as the arguments advanced in *OCA - Asian Pac. Am. Advocates v. Rubio* (Civil Action No. 25-287 D.D.C. May 14, 2025), and here, as in OCA, they "fall flat." In *OCA*, the Court denied a stay. It held: "[B]eing required to defend a suit, without more, is generally not a significant harm. […] This is particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]. [….] And that is even more so here, given that the cases […] concern the same Executive Order, and the same legal issues, at the heart of this case. So even if forcing [the government] to remain on "the beaten track" constitutes harm in some sense, that harm does little to support their motion." *Id*., citing *Landis*, 299 U.S. at 256 (cleaned up). The government's motion fails to account for the ongoing and irreparable harm suffered by Plaintiffs, who are subject to tariffs that they allege violate constitutional and treaty protections. These harms are not speculative: as set out in 18 declarations (3-ER-164–283), they are active and compounding. Holding this case in abeyance would prolong the deprivation of Webber's rights. Courts routinely deny abeyance where delay would prejudice the party seeking relief, especially in constitutional cases. *Landis, id.*,

299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law…").

9. The only coherent principle of the government's argument is that "this administration always wins." See Justice Jackson's dissenting opinion in *National Institutes of Health v. American Public Health Association*(August 2025)("This is Calvinball jurisprudence with a twist. Calvinball has only one rule: There are no fixed rules. We seem to have two: that one, and this Administration always wins.")

10. The government's request is unwarranted. Webber, St. Goddard, and the Mountain Chiefs continue to pay tariffs that a President has no authority to impose on Indian Tribes. The orderly course of justice requires keeping this case on track. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Respectfully submitted this 5th day of September, 2025.

                          TRANEL LAW FIRM, P.C.

By:   /s/ *Monica Tranel*
       Monica Tranel
       TRANEL LAW FIRM, P.C.
       401 Washington Street
       Missoula, MT 59802
       (406) 926-2662
       mtranel@tranelfirm.com
       Attorneys for Plaintiffs

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that this motion complies with the type-volume limit of Ninth Circuit Rule of Appellate Procedure 27(d)(2)(A) because it contains 1502 words. This motion complies with the typeface and type-style requirements of Rules 27(d)(1)(E) and 32(a)(5)-(6).

DATED this 5th day of September, 2025.

                                               */s/ Monica J. Tranel*
                                               Monica J. Tranel