IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

| | |
|---|---|
| Susan Webber, Jonathan St. Goddard, Rhonda Mountain Chief and David Mountain Chief, <br><br>Appellants, <br><br>vs. <br><br>U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED STATES OF AMERICA, and, in her official capacity, KRISTI NOEM, <br><br>Appellees. | No. 25-2717 |

**APPELLANTS OPPOSITION TO GOVERNMENT'S SECOND MOTION TO HOLD PROCEEDINGS IN ABEYANCE**

The U.S. Supreme Court's grant of certiorari in *Trump v. V.O.S. Selections, Inc.* does not warrant a stay of this case, including the oral argument set for September 17, 2025. In *People v. Express Scripts, Inc.*, 139 F.4th 763 (9th Cir. 2025) this Court held that "stays pending appeal are discretionary" and that a "stay is not a matter of right" but rather "an exercise of judicial discretion," and "[t]he propriety of its issue is dependent upon the circumstances of the particular case." *Id.* 139 F.4th at 769; *Nken v. Holder*, 556 U.S. 418, 433-434 (2009)(cleaned up). The government has not shown that the circumstances justify a stay. See, *e.g., Clinton v. Jones*, 520 U.S. 681, 708 (1997); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936).

1

Allowing the stay would put Webber "effectively out of court" which the government implicitly acknowledges by failing to address the fact that Webber's claims are distinct from the cases at the Supreme Court. *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 9, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983), and *Idlewild Bon Voyage Liquor Corp. v. Epstein*, 370 U.S. 713, 715 n. 2, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962). The government's position directly contradicts its opposition to Webber's intervention at the Supreme Court, which was filed to preserve the opportunity to advance these core arguments. The government's stay motion, partnered with its objection to Webber's intervention, results in denying Webber any forum for relief.

Webber's claims, brought under the Indian Commerce Clause, are not raised in any other case. As the Supreme Court has held, "the Indians' participation in litigation critical to their welfare should not be discouraged." *Arizona v. California*, 460 U.S. 605, 615 (1983). Under the Indian canons of construction, congressional silence in IEEPA and Section 232 allows no other conclusion than that the Executive Orders are unconstitutional and do not apply to Tribal commerce. Adjudication of that question cannot be stayed under *Landis*.

This Court has exclusive jurisdiction to adjudicate the unique and crucial issues that are distinct from those before the Supreme Court. Webber's claims are not merely about the commercial legality of tariffs but are rooted in fundamental

2

constitutional principles and a unique body of federal Indian law. Article I, Section 8, Clause 3, the Indian Commerce Clause, grants Congress the exclusive power to regulate commerce with Indian Tribes. *Cherokee Nation v. Georgia*, 5 Pet. 1 (1831); *Haaland v. Brackeen*, 599 U.S. 255, 143 S. Ct. 1609 (2023). This is a distinct power from regulating commerce with foreign nations or among the states. The President has no authority to impose tariffs on Indian Tribes, which includes the individuals that comprise the Tribes. *Haaland*, 599 U.S. 255, 274-75; *U.S. v. Holliday*, 70 U.S. 407, 418 (1865); *Gibbons v. Ogden*, 22 U.S. 1 (1824).

This Court has exclusive jurisdiction over the claims, and the Transfer Order is an immediately appealable collateral order under *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, (1949) and this Court's controlling precedent in *Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007). Unlike *V.O.S. Selections*, Webber's claims are not governed by the International Emergency Economic Powers Act of 1977 (IEEPA) or the Trade Expansion Act of 1962 (19 U.S.C. § 1862(c)(1)(A)) (Section 232). IEEPA and Section 232, which the executive orders rely on to impose tariffs on tribes, pertain exclusively to foreign commerce. Neither statute mentions Indian Tribes or Tribal commerce.

The government concedes that Webber's challenge to tariffs imposed under Section 232 is not controlled by the Supreme Court's disposition of *V.O.S. Selections*. In the same way, Webber's challenge to tariffs imposed under IEEPA

3

are not controlled by *V.O.S. Selections* because nothing in IEEPA mentions Tribes. In *V.O.S. Selections*, the Federal Circuit used the Harmonized Trade Schedule of the United States [HTSUS] as the necessary jurisdictional hook to trigger 28 U.S.C. § 1581(i)(1)(B). *V.O.S. Selections*, 2025 WL 2490634, at *22-23. This conclusion fails to control the outcome of Webber's challenge because it has nothing to do with the President's authority to impose tariffs *on Tribes*.

　　The argument set for September 17, 2025, will allow this Circuit to address and adjudicate tribal sovereignty and treaty rights, which are not identical to those of the other litigants in the Supreme Court case. The Ninth Circuit has developed a significant part of the jurisprudence involving Indian canons and treaty rights, and this Circuit should continue to develop that jurisprudence by keeping the oral argument as set and expediting a decision for inclusion in any Supreme Court analysis. This record would be invaluable for the Supreme Court.

　　The Supreme Court's decision, absent inclusion of the specific issues raised by Webber related to Tribal commerce, will not resolve all the issues in the case. An oral argument at the Ninth Circuit would help ensure that these issues are fully developed, whether they are ultimately decided by the Supreme Court or on remand. The Ninth Circuit has long recognized its authority to adjudicate constitutional claims even where parallel proceedings exist elsewhere. *Lowe v. Manhattan Beach City School District*, 222 F.2d 258, 260 (9th Cir. 1955) quoting

4

*Bell v. Hood*, 327 U.S. 678, 684 (1946)("the right of the petitioners to recover under their complaint will be sustained if the Constitution and laws of the United States are given one construction and will be defeated if they are given another"). The question of whether the President can impose tariffs on Tribes, when no statute grants that authority, is not before any other Court in any other case.

Proceeding with the oral argument does not prejudice the government. The benefit of a complete record outweighs any minor burden on the government. The government argues that abeyance would promote judicial economy. But where jurisdiction is actively contested, and the case involves distinct legal theories and plaintiffs, judicial economy is not served by delay. The Ninth Circuit is not bound by the Federal Circuit's interpretation of CIT jurisdiction, and deference is not required where constitutional rights are at stake. *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278 (9th Cir. 1988).

In *Trump v. CASA, Inc.*, 606 U.S. ___ (2025), the government explicitly argued that constitutional challenges to executive orders, particularly those implicating foundational rights, should be allowed to "bubble up" through the lower courts to ensure a full and diverse record for Supreme Court review. The Court acknowledged this rationale in denying universal relief and emphasized the importance of independent adjudication across circuits. See *Trump v. CASA, Inc.*, No. 24A884. Webber presents distinct constitutional and treaty-based claims

5

involving Tribal trade rights under Jay's Treaty and the Supremacy Clause. It is precisely the kind of litigation that benefits from independent development in the Ninth Circuit, the circuit that has dealt most extensively with Indian law canons.

The government's arguments here are largely the same as the arguments advanced in *OCA - Asian Pac. Am. Advocates v. Rubio* (Civil Action No. 25-287 D.D.C. May 14, 2025), and here, as in OCA, they "fall flat." In *OCA*, the Court denied a stay. It held: "[B]eing required to defend a suit, without more, is generally not a significant harm. […] This is particularly true of counsel for the United States, the richest, most powerful, and best represented litigant to appear before [the Court]." *Id.*, citing *Landis*, 299 U.S. at 256 (cleaned up).

The government's motion fails to account for the ongoing and irreparable harm suffered by Plaintiffs, who are subject to tariffs that they allege violate constitutional and treaty protections. These harms are not speculative: as set out in 18 declarations (3-ER-164–283), they are active and compounding. Holding this case in abeyance would prolong the deprivation of Webber's rights. Courts routinely deny abeyance where delay would prejudice the party seeking relief, especially in constitutional cases. *Landis, id.*, 299 U.S. at 255 ("Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law…").

The only coherent principle of the government's argument is that "this

6

administration always wins." See Justice Jackson's dissenting opinion in *National Institutes of Health v. American Public Health Association*(August 2025)("This is Calvinball jurisprudence with a twist. Calvinball has only one rule: There are no fixed rules. We seem to have two: that one, and this Administration always wins.")

The government's request is unwarranted. Webber, St. Goddard, and the Mountain Chiefs continue to pay tariffs that a President has no authority to impose on Indian Tribes. The orderly course of justice requires keeping this case on track. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962).

Respectfully submitted this 10th day of September, 2025.

                             TRANEL LAW FIRM, P.C.

                             By:   /s/ *Monica Tranel*
                                   Monica Tranel
                                   TRANEL LAW FIRM, P.C.
                                   401 Washington Street
                                   Missoula, MT 59802
                                   (406) 926-2662
                                   *mtranel@tranelfirm.com*
                                   Attorneys for Plaintiffs

## CERTIFICATE OF COMPLIANCE

I hereby certify that this motion complies with the type-volume limit of Ninth Circuit Rule of Appellate Procedure 27(d)(2)(A) because it contains 1445 words. This motion complies with the typeface and type-style requirements of Rules 27(d)(1)(E) and 32(a)(5)-(6).

DATED this 10th day of September, 2025.

                                           */s/ Monica J. Tranel*
                                           Monica J. Tranel