No. 25-2717

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

Susan Webber, Jonathan St. Goddard,
Rhonda Mountain Chief and David Mountain Chief,
*Plaintiffs-Appellants*,

v.

U.S. DEPARTMENT OF HOMELAND SECURITY, THE UNITED
STATES OF AMERICA, and,
in her official capacity, KRISTI NOEM
*Defendants-Appellees*.

On Appeal from the United States District Court
for the District of Montana
No. CV 25-26-GF-DLC
Hon. Dana Christensen

APPELLANT'S SUPPLEMENTAL BRIEF ON APPELLATE
JURISDICTION

Monica J. Tranel
TRANEL LAW FIRM, P.C.
401 Washington Street
Missoula, MT 59802
(406) 926-2662
mtranel@tranelfirm.com
*Attorneys for Appellants*
Susan Webber, Jonathan St. Goddard,
Rhonda Mountain Chief and David Mountain Chief

## SUPPLEMENTAL BRIEF ON APPELLATE JURISDICTION

This Court has appellate subject matter jurisdiction to review the district court's §1631 transfer order for three reasons:

1) Appellate review is triggered by a district court's denial of its own subject matter jurisdiction and transfer under section 1631 conclusively finding it lacks the power to proceed over constitutional claims;

2) the collateral order doctrine applies; and

3) effective denial of a preliminary injunction is immediately reviewable.

**I.      This Court's appellate jurisdiction is triggered to review the district court's denial of its own power to act.**

**A.      Section 1631 was enacted to cure a want of subject matter jurisdiction.**

28 U.S.C. § 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title […] and that court finds that there is a *want of jurisdiction*, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court […] in which the action or appeal *could have been brought* at the time it was filed or noticed, […].

28 U.S.C. § 1631 was adopted as part of the Federal Courts Improvement Act of 1982 (Pub. L. 97–164). The goal of the FCIA was to restructure federal jurisdiction and create specialized courts. *U.S. v. County of Cook, Ill.*, 170 F.3d 1084, 1089 (Fed. Cir. 1999). The FCIA created two major new specialized court systems. The United States Court of Appeals for the Federal Circuit (CAFC)  was

established to centralize and unify the appellate law in specific, complex areas such as patent appeals, certain claims against the U.S. government, and review of decisions from the Court of International Trade, established by the Customs Courts Act of 1980. The United States Claims Court replaced the former Court of Claims as the trial court for major monetary claims against the U.S. government (Tucker Act claims). This court is now known as the U.S. Court of Federal Claims (CFC).

Section 1631's "want of jurisdiction" meant subject matter jurisdiction, and it was enacted to address the difficulties litigants faced in correctly choosing the specialized court created by the Act. Senate Report No. 97-275, at 11 (1982)(the provision allows a court to transfer a case to a court where subject matter jurisdiction exists). 15 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, *et al.*, *Federal Practice & Procedure*, § 3842 (3rd Ed. 2024) (The legislative history of 28 U.S.C. 1631, as embodied in the Senate Report accompanying it, is quite clear that Section 1631 was intended to apply only to situations in which a court lacked subject matter jurisdiction). See also *Allen v. Conagra Foods, Inc.*, Case No. 3:13-cv-01279-WHO (N.D. Cal. 2019). The alternative to transfer under section 1631 is dismissal. Section 1631 was enacted to save time and advance justice by ensuring that litigants proceed in the forum with subject matter jurisdiction over their claims.

Over time, courts expanded "want of jurisdiction" in 28 U.S.C. § 1631 to

3

cover defects in personal jurisdiction, while others applied it in contexts implicating venue. See e.g., *Bibiano v. Lynch*, 834 F.3d 966 fn. 7 (9th Cir. 2016) citing and quoting U*nion Pacific R.R. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67, 81 (2009)("Recognizing that the word jurisdiction has been used by courts, including this Court, to convey many, too many, meanings, we have cautioned, in recent decisions, against profligate use of the term."). See also *Freedman v. SunTrust Banks, Inc.*, 139 F.Supp.3d 271 (D. D.C. 2015)(discussing venue and personal and subject matter jurisdiction issues).

This lack of clarity led to inconsistent applications across circuits and overlapping use with other transfer statutes, particularly 28 U.S.C. § 1406. Ninth Circuit cases suggest this circuit has limited section 1631 to subject matter jurisdiction. *Allen, id.* at 7, citing *Kolek v. Engen*, 869 F.2d 1281, 1284 (9th Cir. 1989) (Section 1631 authorizes federal courts to transfer appeals in civil actions in order to cure a lack of subject matter or appellate jurisdiction); *Gherebi v. Bush*, 352 F.3d 1278, 1302 n. 30 (9th Cir. 2003) (§ 1631 relates to subject matter jurisdiction.), cert. granted, judgment vacated, 542 U.S. 952 (2004).

Expanding § 1631 beyond its initial subject-matter jurisdiction application led to a need to limit appellate review for interlocutory venue and personal jurisdiction transfer orders. This limitation of appellate review was predicated on the grounds that "section 1631 orders are interlocutory for the same reason that

venue transfers are: the very purpose of transfer provisions is to allow the case to continue, rather than terminating it." *Ukiah Adventist Hosp. v. F.T.C.*, 981 F.2d 543, 546 (D.C. Cir. 1993). In *Ukiah* the D.C. Circuit noted that concurrent jurisdiction "defeats review of a transfer order" in the transferee circuit, creating the unique set of circumstances where courts have appellate subject matter jurisdiction over a section 1631 transfer order. *Ukiah*, 981 F.2d at 547, citing 15A Charles A. Wright et al., *Federal Practice And Procedure* § 3914.12, at 725 (2d ed. 1992) (there is little reason to allow appeals of section 1631 orders other than in concurrent jurisdiction context).

Thus, cases limiting appellate subject matter jurisdiction to review a transfer order under section 1631 do so on the premise that the case continues in the correct forum as a result of the transfer.

**B.** **Transfer to a court without jurisdiction does not "continue" the case but effectively ends it in a proper forum, triggering immediate appellate review.**

Reading section 1631 in its proper legislative context, a district court's decision to transfer to a different judicial system (the Court of International Trade) based on lack of subject matter jurisdiction is immediately appealable precisely because the district court's determination resolves a fundamental question about the statutory boundary of its own subject-matter jurisdiction relative to a specialized court. This is a systemic issue of judicial power, not a simple intra-

system transfer.

In *Gower v. Lehman*, 799 F.2d 925, 927 (4th Cir.1986), the Fourth Circuit distinguished cases addressing venue, which do not concern the district court's "power to transfer," and held that "when the transferring court's authority to transfer is challenged, the circuit court retains jurisdiction to review the transfer even after its completion."

Here, as in *Gower*, the question on review is "the transferring court's authority to order the transfer." The dispositive language in *Gower* applies squarely here: "The order transferring the case may be appealed on the ground that the district court had jurisdiction and consequently erred in ordering the transfer." *Gower* 799 F.2d at 928. The litigant is left without a forum in which to be heard.

In *Gower*, the Fourth Circuit found it had appellate subject matter jurisdiction over a section 1631 transfer order because it is "quite different from a transfer between district courts." Section 1631 stipulates that an essential predicate to a transfer is the district court's "want of jurisdiction." The focus of the appellate court's jurisdiction is the district court's "power to transfer."

Article III of the Constitution confers jurisdiction upon federal courts to hear "all Cases, in Law and Equity, arising under this Constitution, the laws of the United States, and Treaties made, or which shall be made, under their Authority." *Newtok Vill. v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021) U.S. Const. Art. III, § 2,

Cl. 1. Congress directed that federal district courts are the proper fora for suits arising under the treaties of the United States, especially those suits brought by federally recognized Indian tribes, including individual members of the tribe. *Stillaguamish Tribe of Indians v. Washington*, 102 F.4th 955, 968 (9th Cir. 2024).

Here individual tribal members seek to enforce treaty rights. From *Holliday* to *Haaland v. Brackeen* courts have explained that virtually all authority over Indian commerce and Indian tribes lies with the Federal Government. *United States v. Holliday*, 70 U.S. 407 (1866); *Haaland v. Brackeen,* 599 U.S. 255, 294-95 (2023); *Club One Casino v. Bernhardt,* 959 F.3d 1142, 1152 (9th Cir. 2020) (the authority to regulate Indian affairs is one of the enumerated powers of the federal government). With the adoption of the Constitution, Indian relations became the exclusive province of federal law.

The Webber case is like the *Gower* situation because having the entire case tried in a court that does not have subject matter jurisdiction is a waste of time and money to obtain a judgment that cannot be enforced. As Justice Brennan wrote in *Christianson v. Colt Industries Operating Corp*, 486 U.S. 800, 818 (1988), a court cannot extend (or deny) its own jurisdiction in the "interests of justice" and parties should not be compelled to spend years "litigating claims only to learn that their efforts and expense were wasted in a court that lacked jurisdiction."

This Court, sitting *en banc,* addressed the question of a section 1631 transfer to a specialized court in *Skokomish Indian Tribe v. U.S.*: "Because we lack subject matter jurisdiction over the Tribe's damages claims against the United States, but believe they might properly have been brought under the Indian Tucker Act, we exercise our discretion to transfer these claims to the Court of Federal Claims." *Skokomish Indian Tribe v. U.S.*, 410 F.3d 506, 511 (9th Cir. 2005). 28 U.S.C. § 1631. *Skokomish* demonstrates the Ninth Circuit's authority to hear this appeal by its own precedent of performing systemic jurisdictional allocations in Indian law cases. Webber asks the Ninth Circuit to exercise the same high-level jurisdictional review *now* to correct an erroneous transfer, rather than forcing the claim through the specialized CIT system. The interest of justice requires the Ninth Circuit to assert its jurisdiction and correct the error.

This Court explained in *Bibiano v. Lynch* "where a court has subject matter jurisdiction but venue is not proper, federal circuit courts have inherent transfer authority and need not rely on 28 U.S.C. § 1631." *Bibiano v. Lynch*, 834 F.3d 966, 973-974 (9th Cir. 2016). Indeed, if the district court has jurisdiction, it *cannot* transfer under section 1631 as that statute requires a want of jurisdiction for transfer to be proper. Here, the district court determined a want of jurisdiction by function of the exclusivity of the CIT's jurisdiction over foreign commerce. This cannot be correct given the Indian Commerce Clause's differentiation of foreign

8

and Indian commerce.

The district court conflated foreign and tribal commerce. Reading Webber's complaint as challenging "a Presidential action imposing duties, tariffs, or other import restrictions on a *foreign* nation under the IEEPA and Section 232 of the Trade Expansion Act" (ER 33) the district court found that the narrow, specific jurisdiction of 28 U.S.C. § 1581 excluded the constitutional federal jurisdiction in the Indian Commerce Clause and § 1331.

The transfer order did not continue the case, as § 1631 is intended to operate, but operates as the equivalent of an appealable dismissal with respect to the original forum's decision on subject matter jurisdiction. See e.g., *Johnson v. High Desert State Prison*, 127 F.4th 123, 128 (9th Cir. 2025) citing *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1084-85 (9th Cir. 2003)(dismissal is an appealable order). The transfer order definitively terminates the litigation in the selected forum, which, as the only forum with authority to hear and decide the case, leaves Webber without the legally mandated forum to adjudicate the unique constitutional issue presented. That result is immediately reviewable. *Montana Wildlife Federation v. Haaland*, 127 F.4th 1, 27-28 (9th Cir. 2025).

## C. Webber could not have filed these constitutional claims in the Court of International Trade.

The district court found the executive orders impose tariffs under IEEPA, triggering the CIT's exclusive jurisdiction under 28 U.S.C. § 1581(i)(1)(B).

9

Missing from the district court's analysis, and critical to appellate subject matter jurisdiction, is the fact that the executive orders impose tariffs on ***foreign*** imports under IEEPA 1702(a)(1)(B) and Section 232. ER 53, 59. IEEPA, as set out at 50 U.S.C. § 1702(a)(1)(B), applies only to foreign commerce: To the extent specified in section 1701, the President may "regulate, [..] transactions involving [..] property in which any *foreign country* or a national thereof has any interest."

IEEPA and Section 232 are directed to *foreign* commerce, and are silent as to tribal commerce. The Commerce Clause draws a clear distinction between "States," "foreign Nations," and "Indian Tribes." The CIT's jurisdiction is limited to foreign commerce. The CIT does not have subject matter jurisdiction over tribal commerce. As in *Gower*, the transfer from the federal court to a specialized court means that the subject matter jurisdiction question must be answered on an immediate appeal to ensure that the Webber plaintiffs do not lose their right to litigate altogether. IEEPA and Section 232's silence as to tribal commerce cannot be read as impliedly extending executive branch authority, and with it, jurisdiction at the trade court, over tribal commerce.

IEEPA does not contain a catch-all or residual clause that would allow the President to exercise powers beyond those specifically listed. *VOS Selections*, 2025 WL 2490634, *Learning Resources* 784 F. Supp. 3d 209. Indian canons of construction apply "uniformly" to "treaties, statutes[,] and executive orders."

*Metlakatla Indian Cmty. v. Dunleavy*, 58 F.4th 1034, 1046 (9ᵗʰ Cir. 2022). These canons continue to be adopted in *McGirt v. Oklahoma*, 140 S.Ct. 2452, 2462, *Haaland v. Brackeen,* 599 U.S. 255, 294-95 (2023), and *Herrara v. Wyoming,* 587 U.S. 329 (2019). To the extent *Arizona v. Navajo Nation,* 599 U.S. 555, 143 S. Ct. 1804 (2023) and *Oklahoma v. Castro-Huerta,* 142 S.Ct. 2486 (2022) have questioned the relationship of the states to tribes, they nevertheless reiterate two foundational principles: 1) The Court does not infer congressional intent that is not clearly expressed; and 2) where a right is clearly expressed it will be followed. The text of a law controls over legislative intentions and a court may not "replace the actual text with speculation as to Congress' intent." *Oklahoma*, *id*. at p. 2497; also *Montana v. Blackfeet Tribe,* 471 U.S. 759 (1985) (congressional action must be clear and can't be implied).

Whatever IEEPA may be about, it is not about tribal commerce, and the CIT does not have subject matter jurisdiction over Webber's claims. Webber challenges the President's power to act regarding tribal commerce, a constitutional claim arising out of Article I, Section 3, Cl. 8 and Article VI and the treaties of Jay, Greenville, and Spring Wells. The principles set out in *Christianson*, 486 U.S. at 818, compel immediate review of the district court's order on subject matter jurisdiction because if the district court is wrong, then Webber will be forced to litigate in a forum that does not have the ability to render an enforceable judgment.

*Hays v. Postmaster Gen. of U.S.*, 868 F.2d 328, 331 (9th Cir. 1989)(courts created by statute can have no jurisdiction but such as the statute confers).

Webber could not have filed this case at the CIT, rendering the transfer order legally invalid, and immediately appealable in this Court. If Webber is forced to litigate at the CIT without a determination on whether the district court was right or wrong in issuing its transfer order, the entire litigation will be taking place in a judicial system without subject matter jurisdiction.

**D.    Appellate subject matter jurisdiction to review a transfer order lies exclusively in the transferor circuit.**

Case law is clear and consistent: only the transferor circuit has appellate subject matter jurisdiction to review a transfer order under 28 U.S.C. § 1631. *Rigsby v. Godaddy Inc.*, 59 F.4th 998 (9th Cir. 2023); *Posnanski v. Gibney*, 421 F.3d 977, 980 (9th Cir. 2005) and *Terenkian v. Republic of Iraq*, 694 F.3d 1122, 1130-1131 (9th Cir. 2012). This rule is supported by decisions from nearly every circuit, as well as by leading treatises and commentators. *Posnanski*, 421 F.3d at 979; *Terenkian,* 694 F.3d at 1130. 28 U.S.C. § 1294. Direct appellate review of the original transfer order remains the exclusive province of the transferor circuit. This approach ensures orderly judicial administration and respects the jurisdictional boundaries of the federal appellate courts. If the transfer order can be reviewed at all, it can only be reviewed in this Court.

The question is one of timing. If Webber must wait for a final judgment from the CIT to appeal the transfer order, the argument becomes procedurally circular and nonsensical:

⇒ The CIT cannot review the transfer decision. *Christianson*, 486 U.S. at 818.

⇒ The Federal Circuit Court of Appeals cannot review the transfer order because it cannot rule on the jurisdictional decision of the court in the transferor circuit. Only the Ninth Circuit can rule on the jurisdictional decision of the Montana District Court. *Rigsby*; *Posnanski*; *Terenkian*.

⇒ Waiting for the CIT's final judgment would not cure the injury; it would merely validate the permanent loss of the original, proper forum, an issue that is then "effectively unreviewable" from the final judgment of the transferee court.

This Court's appellate subject matter jurisdiction to review a transfer order derives from the fact that section 1631 is a jurisdictional statute, not merely a change of venue provision. A transfer based on section 1631 operates as a final adverse judgment on the transferor court's own jurisdiction and the litigant's right to that forum. As a result, a transfer order that is wrong on subject matter jurisdiction is one of the narrow, rare cases that is elevated to the status of a final,

immediately appealable decision under 28 U.S.C. § 1291 because it leaves the plaintiffs without a forum in which they can be heard.

## II.  This Court has jurisdiction under the collateral order doctrine.

The collateral order doctrine, as set out in *Pizzuto v. Tewalt*, 136 F.4th 855 (9th Cir. 2025), allows immediate appeal of a small class of non-final orders that conclusively resolve important questions separate from the merits and are effectively unreviewable on appeal from final judgment. This Court held in *Terenkian* that a district court's denial of a motion to dismiss for lack of subject matter jurisdiction is subject to interlocutory appeal under the collateral order doctrine. *Terenkian*, 694 F.3d at 1130-1131. The same principle applies here, where the district court's decision on subject matter jurisdiction forces the litigants into a forum that does not have subject matter jurisdiction.

When a court transfers a case because it lacks subject matter jurisdiction, it is conclusively resolving an important issue, separate from the merits, and is not simply shifting the case to a correct forum but relegating the litigants to no-man's land. That was the situation in *Gower*, which applied the collateral order doctrine to a section 1631 transfer order denying subject matter jurisdiction.

Applying the collateral order doctrine to a section 1631 transfer order narrowly focuses on a transfer that resolves a fundamental jurisdictional conflict between *different federal court systems*, not transfers between two federal district

14

courts. In *Gower*, the district court found that the plaintiff's claim fell under the exclusive jurisdiction of the CFC (specifically the Tucker Act), meaning the district court was statutorily incapable of ever hearing the case. The district court made the same error, only at a constitutional level.

The transfer order is conclusive, separate from the merits, and effectively unreviewable. The collateral order doctrine is a "narrow exception" to the final judgment rule (28 U.S.C. § 1291) and its elements are met here.

### A.    The Transfer order is conclusive.

The district court held that the Court of International Trade has exclusive jurisdiction under 28 USC § 1581(i). ER 11 – 13, ER 36. The transfer order conclusively determines the forum where the case will proceed. The district court's order is a conclusive denial of its subject-matter jurisdiction over the constitutional challenge to executive authority. *Christianson*, 486 U.S. at 818 (once the transferor court makes its decision, the transferee court is then bound by the law of the case). The district court's determination under § 1631 is conclusive.

### B.    The district court held jurisdiction is separate from the merits.

The district court found that whether the CIT has jurisdiction under IEEPA is an issue of first impression and emphasized "that it does not make any findings on the merits of this case and whether the IEEP (*sic*) provides Presidential

authority to impose tariffs." ER 15, fn 2. "In transferring this matter to the CIT, the Court made no judgment on the merits [..]." ER p. 34.

The government agreed: in its brief opposing intervention in the Supreme Court Docket 25-250/24-7314, p. 2 it represented: "The district court did not address the merits …, but [found] the CIT [has] exclusive jurisdiction and the district court was…"divested of jurisdiction."" Based both on the district court and the government's words, the second element of the collateral order doctrine is satisfied. *Dependable Highway Exp. v. Navigators Ins. Co.*, 498 F.3d 1059 (9th Cir. 2007), 1066 "[a]n order that amounts to a refusal to adjudicate the merits plainly presents an important issue separate from the merits."

### C.    The transfer order is effectively unreviewable.

In *Jarrett v. Terrell*, 21-55263 (9th Cir. 2022) (unpublished opinion), this Court held that an appeals court does not have jurisdiction to review the original transfer order to its circuit. This is settled law in the 9th circuit. *Rigsby*, *Posnanski* and *Terenkian* are in accord: transfer orders "are reviewable only in the circuit of the transferor district court." And importantly: "A district court's transfer of a case to an out-of-circuit district court does not strip an appellate court of jurisdiction over an interlocutory but immediately appealable, and timely appealed, decision" of a district court within its circuit. An aggrieved party cannot pursue an appeal in the transferee circuit. 15 Charles Alan Wright, Arthur R. Miller & Edward H.

Cooper, *Federal Practice And Procedure* § 3846, 359 (1986).

The central jurisdictional defect that makes the transfer order immediately appealable is the irrevocable loss of the proper constitutional forum. This Court's application of the collateral order doctrine here, in a subject matter jurisdiction transfer out of an Article III court into a specialized court, places review in a narrow line of cases where constitutional questions were presented. *Pizzuto v. Tewalt*, 136 F.4th 855 (9th Cir. March 2025); *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Stacke v. Secty of Labor* 841 F.2d 278, 281 (1988); *Rodrigues v. Donovan,* 769 F.2d 1344, 1348 (9th Cir. 1985).

Appellants' challenge is based on the Indian Commerce Clause that gives exclusive jurisdiction to regulate commerce "with the Indian Tribes" to Congress. Appellants are enrolled members of the Blackfeet Nation. This Court is the *only* court with jurisdiction to review constitutional claims – the only claims raised. *Califano v. Sanders*, 430 U.S. 99, 109 (1977)(it is a well-established principle that when constitutional questions are in issue, the availability of judicial review is presumed).

## III.    A preliminary injunction is immediately reviewable.

A preliminary injunction is effectively denied when the district court fails to rule. The district court's failure to address Webber's request for injunctive relief is immediately reviewable under 28 U.S.C. § 1292(a)(1). *WWM v. Trump*, 605 U.S.

17

___ (2025), slip op. p. 3, citing *Carson v. American Brands, Inc.*, 450 U.S. 79, 84 (1981); *W.M.M. v. Trump*, No. 25-10534, 2025 WL 2508869 (5th Cir. Sept. 2, 2025, granting preliminary injunction), *W.M.M. v. Trump*, No. 25-10534 (5th Cir. Sept. 30, 2025) (granting rehearing *en banc* and vacating panel opinion of Sept. 2, 2025). See also *Montana Wildlife Federation v. Haaland*, 127 F.4th 1, 28 (9th Cir. 2025)(the substantial effect of an order, rather than its terminology, determines appealability).

## CONCLUSION

This Court has appellate subject matter jurisdiction to review the district court's denial of its own subject matter jurisdiction and transfer under §1631 because the transfer order leaves Webber without a forum in which to have these constitutional claims heard.

Appellants respectfully request an expedited ruling.

DATED this 3rd day of October, 2025.

TRANEL LAW FIRM P.C.

    */s/ Monica J. Tranel*
Monica J. Tranel
*Attorneys for Appellants*

18

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 27(d)(2) and Ninth Circuit Rules 27-1(1)(d) and 32-3, I certify that the foregoing brief has a word count including footnotes as calculated by Microsoft Word for Mac of 3,935 words, excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

DATED this 3rd day of October, 2025.

TRANEL LAW FIRM P.C.

*/s/ Monica J. Tranel*
Monica J. Tranel
*Attorneys for Appellants*